Arlene Diaz, Administrator of the Estate of Garcia v. Archer Daniels Midland. For the appellate, Ms. Ruppes, and for the appellate, Mr. Reagan, you may proceed. May it please the Court, good morning. My name is Aguello Ruppes. I represent ADM. And with me is Gary Stocks, Trial Counsel. We've raised a lot of issues seeking a new trial here. And due to time constraints, I'd really like to focus just on two, which is the exclusion of the evidence that Mr. Garcia was an illegal alien and the plaintiff's failure to file the Rule 222B affidavit with her original complaint. Now, with respect to the first issue, the Court erred for two reasons. First, the evidence that Mr. Garcia was an illegal alien was directly relevant, and it was not unduly prejudicial. What evidence was there? The evidence was, first of all, the evidence that he was an illegal alien is that he tendered a false Social Security card and a false resident alien card to obtain employment with ECF. Who would have testified for that? Well, the documents themselves were part of our offer. Self-authenticating? Well... The jury, by looking at them, would know that they were falsified? Yes, absolutely. Because in addition to our offer of proof with those documents,  there were these discrepancies and that these are not valid current versions of these documents. But no live witness would have testified to that? Correct. But it's apparent from the face of the documents themselves. For example, the resident alien card. It's undisputed that that card contained or listed a false birthday. It was not Mr. Garcia's birthday. So that alone, it's false. I mean, we cited the Belize case of Middle District of Florida, where the Court determined on summary judgment that that was a false document where the resident alien card lists a false birthday. But separate and apart from those documents, we have Mr. Garcia's own admission that he's an illegal alien. In his employment application with ECF, they said one of the questions is, are you legally authorized to work in this country? He checks no. That's his admission. That's evidence tending to indicate that he's an illegal alien. And that the documents they tendered the very next day are forgeries. Who's got the responsibility to determine whether somebody is an authorized person to work in the United States? Well, that's the employer's obligation. And the employer here certified that this person was. Correct. Correct. I mean, under the Immigration Reform Control Act, they have to fill out this form, this employee eligibility verification form. They have to verify a certain number and type of documents, and they did that here. And the employer verified that he was legal. Exactly. And they said, well, I've looked at his documents. I mean, the affidavit attests, I've looked at his documents. They appear to be genuine. You know, he seems to be eligible to work in the United States. That's all that's required. I mean, now if ECF had discovered at some later point that in fact that wasn't true, they would have an obligation to fire him or they would themselves be in violation of federal law. But no one, plaintiff here is not saying that ECF didn't comply with its obligations under federal law. They did all that they were required to do. How is it relevant? Go ahead. How is it relevant whether he was an illegal alien? Well, it's relevant on the various factors of pecuniary loss. So with respect to his future contributions to his family, that's one factor in pecuniary loss damages. This bears directly on his future earning capacity. I mean, if somebody is an illegal alien,  They're not authorized to live in this country. Is the fact that he's an illegal alien bar any recovery in this case? Well, it bars, I mean, it doesn't bar the claim globally in terms of the wrongful death claim, but it could potentially bar certain elements of damages. So there are cases saying that... Lost earnings cases, but was there a claim for lost earnings here? Well, they put in, plaintiff put in evidence of his U.S. wages. Great, but did they make a claim for lost earnings? Well, there's not a claim as such, but it is one factor in pecuniary loss. And that evidence went into the jury considerative, I mean, his U.S. earnings. But what I'm getting at is the plaintiff didn't argue to the jury he was making $33,000 a year, his life expectancy is 50, or his work life expectancy is 40 more years, therefore he times 40 times 33,000. Did they make that argument? Oh, no, I mean, that's not like a typical wage loss case, but it's essentially an issue here. I mean, even if they don't label their complaint that way, I mean, that's exactly what they were seeking. They were saying, they put in evidence of what he'd earned in years past, and say, look, you know, you... But didn't the jury have the evidence about what his contributions to his family had been? And isn't that what they're asked to determine? What would his future contributions to the family have been? Right. And those contributions were relatively minimal. Well, I mean... In the scheme of things, let's say. I thought they were around $9,000 or something like that. Well, he contributed a total of, like, $15,500 over the course of nine years. But, I mean, the evidence is his sole source of income is his job. So, whether he's able to continue earning anything in the United States, it bears directly... I guess my question, though, to you, isn't there an element of damages? The pecuniary loss, it was based in part... I mean, I know there's all the loss of society and those types of things, but in addition, it's based in part on his financial contributions to the family. But it wasn't based on what he was earning. It was what he was contributing. And the jury knew that amount. Right. But that was based on... I mean, those past earnings, what the jury considered, based on earnings he earned as an illegal alien. And the only way to continue making those types of contributions is to continue, you know, working in violation of federal law. And so the jury was entitled to know that. I mean, if you are not... Isn't there a risk of unfair prejudice here? No, there's no risk of unfair prejudice here. And that's true for a few reasons. I mean, first of all, it's prejudicial. This evidence is prejudicial only in the sense that it's highly relevant and highly probative. And that's not unduly prejudicial. There's not... You know, it's not just that there's a little bit more prejudice than, you know, relevant... You don't think there's a prejudice against illegal aliens? Is there prejudice against illegal... I'm sure there are people in the world who are prejudiced against illegal aliens. But you fared out those type of people during Vardir. And that's exactly what happened here. Well, Vardir isn't perfect. Isn't there a balancing here? And couldn't the judge have decided that the unfair prejudice outweighed the limited relevance? Well, and that's exactly what the trial court found. But that was... I mean, it's not limited... You know, it's not low probative value. I mean, this type of evidence in this particular case is not gratuitously prejudicial. I mean, it bore directly not only on future contributions, but to loss of society and its character traits. I mean, there were other factors it was relevant to. So it does have high probative value. And it's... You know, the court... The jury would not have been deciding the case on an improper basis because... ...character. Well, so loss of society. I mean, the parents... This was revealed in the discovery depositions. But the parents, the family members didn't know what his immigration status was. Right. So if they're saying, oh, you know, we're really close. We're very close family. You know, this type of evidence, if they didn't even know, you know, what his... By what authority he was in the country or even how he got into the country, that certainly would bear on how close the family were with... The closeness of the family and how often they saw him. Was that in the record? Yes. Before the jury, I mean. That was before the jury, so... So they knew that. Yes. The jury knew about... I guess some gradation or quality of loss of society. Well, yes. I mean, there was evidence that the parents got up and testified. You know, we were very close. You know, Mr. Garcia's close... But we only visited him. He only visited... Right, one time in nine years. Well, then how does his immigration status affect or give any extra weight to the fact that maybe they weren't as close as they said they were? Well, because... Or the jury had the opportunity to evaluate how close they were based upon the evidence that was presented. Well, because they didn't have the full story. I mean, they're getting a little... And what would the full story have asked? The full story is that the parents testified in their discovery depositions. They didn't know. They were asked, you know, what's his status? How did he get into the country? They didn't know. Okay, and then they say... Let's say they were asked that question at trial. I didn't know what his status was. Yeah. How does that add or detract from a claim that the family is close, thereby elevating loss of society damages versus the jury saying, they're not really that close because they've only seen each other a couple of times and he does send money home. Aren't they making the same evaluation? I don't understand how it fits in the picture. No, because, I mean, it's relevant for the jury to consider if the plaintiff is up there arguing and saying, oh, they were very, very close, but they didn't know a critical fact about his life, that tends to show they were not as close as... What if they didn't know he had AIDS? Well, I mean... Well, then that's bad. I mean, you ought to be able to... I mean, why should that... Let's say he had AIDS. Okay. What relevance is that to this industrial accident and their loss of society greater than the fact that he didn't really see them that often, they didn't visit that much, and he sent a pittance home from our perspective, but maybe a lot from their perspective. What does it add? Because if the family members do not know critical facts, whatever those facts may be, personal facts, major facts... Did they know if he had a girlfriend? Well, the family, they couldn't agree on whether he had a girlfriend. And the jury knew that. Correct. But I think this is additional evidence. I mean, what if added... There could be a million different facts that you'd like to get in front of the jury on how much they didn't know about him, but it's curious that this immigration status is the primary one. Well, because it also bore on other factors. I mean, it's not just limited discreetly to loss of society. It's also character traits and, you know, his beautiful... What does it say about character traits? Well, because his sister testified that he's very trustworthy. And we weren't allowed to say to the jury, to challenge that testimony by saying, look, he tendered these false documents, he was... Aren't there thousands of employers across the United States that employ illegal aliens and oft times knowingly? That's true, but that... And I assume they do that because they will work at a wage, plus they must think... I mean, you don't purposefully hire untrustworthy people. That's true, but that's not the case here. I mean, Mr. Garcia tendered false documents. I mean, he subverted this employer... But you're saying they're obviously false, yet the employer certified he was authorized to work in the United States. Well, yes, that's true. But, I mean, if she looked at the documents... It seems contradictory to me. Well, but we have Garcia's own admission. We have his own admission that he's not authorized to work in the United States. So, I mean, it's not like we have to definitively prove... Well, you don't know if he checked that box by accident or not. He's dead. He couldn't tell you... That's true, but I mean, that doesn't go... If that was a mistake. But that's not a reason not to admit the evidence. I mean, that goes to wait. That doesn't go to admissibility. Plaintiffs can get up on retrial and say, well, he didn't mean it, it's not as in handwriting, he didn't understand. And they can make all those arguments to the jury. But we have... Well, you keep assuming the documents were false. But you had no witness who was going to be allowed to testify that they were false. Weren't you barred in the trial court from presenting a witness? Because of discovery violations? That was Kent Haddon, but that was on a different issue. I'm not talking about the machine and the time and all that. I'm talking about on the illegal alien issue. Did you never have a witness who was going to testify? That was not part of our offer. Okay, so you didn't have an expert who could come in and say, I'm from the Division of Immigration and Naturalization, and I'm looking at these documents, and I can tell you they're false, one, two, three, and here's why. Correct. So you just wanted to introduce these documents to the jury and let them assume they're false. It's not an assumption. I mean, well, we're saying we have evidence. Let the jury figure it out. What expertise would they have to know whether by looking at a document it's a falsification of that? Because it's facially apparent, and it's a simple thing. If you take, for example, the resident alien card, we have his birth certificate, we have his parents' testimony. He was born April 18, 1980. The resident alien card with his name on it has a different birth date. You don't need an expert to tell you, but that's false. That's a false document. Or the birth certificate is false. Well, we have his parents' testimony, then. I mean, his parents testified he was born on that date. That's certain. But apparently there are people that are illegals, too, or at least they are afraid to cross the border because of some prior difficulties. So we can't believe anything they say. It's for the jury to figure out. I mean, we're not saying anything is definitive. All we're saying, it's a jury question. We presented evidence that tended to show it's more probable than not that he was an illegal alien. Couldn't the trial court feel that was speculative? You didn't even have a witness. No, but the trial court found it minimally relevant and prejudicial in any case. So we tendered our offer of proof. The plaintiff offered no rebuttal evidence. And you're telling us the trial court was wrong because you argued it has more than minimal relevance. It has more than minimal relevance, and it's not unduly prejudicial. There's another reason it's not unduly prejudicial, because the plaintiff put immigration status at issue herself. And she did this by seeking wages, putting in evidence of Mr. Garcia's United States earnings. So once you do that, I mean, the jury is entitled to hear the full story of how he earned those wages and the fact that he earned them as an illegal alien. And further, the plaintiff also put immigration status at issue by opening the door to it and relying on that evidence herself in voir dire, in closing arguments. So if the plaintiff herself is putting this at issue, it's not unfair, it's not prejudicial. It's, in fact, prejudicial to ADM, who couldn't counter this false impression that Mr. Garcia was a legal alien. And so the jury didn't get the full story. And the plaintiff was trying to create this. I mean, the trial is supposed to be about a truth-seeking process. I mean, that's the point. If the jury is not hearing critical evidence, then that process has been thwarted. What's the standard of review on the trial court's evidentiary decision? It's abuse of discretion. But here at the court, I mean, we have, there are lots of cases. I mean, as you know, this is an issue of first impression in Illinois. But there are lots of cases across the country that have dealt with this exact issue. How do they cut? And they come down in a variety of ways. I mean, there are basically two broad schools of thought. One is that if the illegal alien violates the Immigration Reform Control Act by tendering false documents, then the claim is barred. And there's some other cases graphed an additional requirement, which the defendant has to show that the employer actually relied on the documents in hiring the alien. So in other words, if the employer has also violated the Immigration Reform Control Act by not verifying documents, then some cases say, well, in that case, the claim is not barred. But when the claim goes to trial, many, many cases say that the evidence is relevant and admissible for the jury to consider in conjunction with damages. But those cases all involved a claim for lost earnings, didn't they? Yes, but it's analogous here. And plus, we cited the Belize case and the Collins case, and both of those were wrongful death cases. So it's not just wage loss cases. Wage loss cases. And those cases say, either it's admissible outright, let the jury consider it, or some cases also say, well, you have to prove this so-called something more line of cases. And just the bare fact that the illegal alien status alone, that wouldn't be enough to admit the evidence, but in conjunction with something more like a violation of federal law or imminent deportation. Right, and there was none of that in this case. You had no evidence of imminent deportation. We had no evidence of imminent deportation, but that's not the only circumstance. Not even any investigation. Correct, but that's not the only circumstance that warrants admissibility. But those were circumstances in other cases that were present, but they weren't present in this case. Correct, but in other cases, the fact that the illegal alien had violated federal law by tendering false documents, that was considered something more enough to admit the evidence, and we do have that here. And in fact, this whole something more line of cases was started by this New York trial court decision from 1996 that appears to be the seminal case. And in fact, that decision has never been adopted in its own jurisdiction. I mean, there have been lots of cases decided since PLASA, and no New York appellate court has ever cited it. So essentially, that has been implicitly rejected in its own jurisdiction. So no matter which approach we adopt here, we have evidence proving that either the claim should have been barred, or at the very least, the jury should have considered it. And with my limited time left, I would like to turn the attention now to plaintiff's failure to file the Rule 222B Affidavit of Original Complaint. I mean, the rule is phrased in mandatory terms. It says, the complaint shall have attached to it an affidavit saying whether the plaintiff seeks damages in excess of $50,000 or not. And the consequence of failing to do that is post-trial reduction, post-verdict reduction of the verdict to $50,000. That is also framed in mandatory terms. Now here, it's undisputed. The plaintiff did not file the affidavit. This is filed as a health case, right? Correct. Everybody knows that's more than $50,000. But the rule isn't phrased in terms of what is the complaint alleged. The rule is phrased in terms of what does the affidavit say. And there was no affidavit here. How soon was the affidavit filed after the initial complaint was filed? The court granted leave to amend approximately, it was like a few months, I think. Yeah, 60 days or so, yeah. No discovery had taken place. Correct. What's the prejudice to you of allowing them to file the affidavit? Well, it's not a question of prejudice because you're saying like, well, did the trial court abuse its discretion? It's not a question of did the trial court abuse its discretion in allowing them to amend the complaint to add the affidavit. The point is the trial court didn't have the discretion in the first instance because that's the way the rule is phrased. So if you screw up and you leave off something that's essential, you're done. You cannot ever ask for leave to amend and do the proper pleading, which they did in this case. Not only that, but they did it within approximately 60 days when no discovery had ever taken place in the case. So everybody knew from 60 days after the filing that they were seeking more than $50,000. Well, but again, the rule is phrased in terms of what does the affidavit say, not what does the complaint say. And it's not unduly harsh here because the plaintiff could have voluntarily dismissed the complaint, refiled with the proper affidavit. The rule says if the damages sought do not exceed $50,000, this rule shall apply. Correct. Well, if the damages exceed $50,000, then the rule does not apply. Well, but that's as determined from the affidavit. And if the plaintiff doesn't file an affidavit, they aren't seeking damages in excess of $50,000. I mean, that's the way the rule is written. It has to be applied as it's written, strictly, and refers to the affidavit. Thank you, Counsel. We'll hear from the Honorable. Mr. Reagan? May it please the Court, Counsel, my name is Mike Reagan, and together with Don Shapiro, who is trial counsel and is seated at the table with me, we represent Laura Diaz, Administrator of the Estate of Francisco Garcia, deceased. Francisco was killed as a result of the failure of equipment at an ADM plant. ADM admitted liability. Francisco suffered horrific injuries and died a lingering death. What we're faced with here this morning, what the Court's faced with, is a discretionary ruling on evidence. The trial court wisely exercised its discretion in excluding the specific evidence, which is what the case is about. It's not something in the abstract. It's this evidence in this case. Offered by defendant on the immigration status of Francisco, defendant sought to admit flimsy and inadequate evidence, which was only marginally relevant to the issues of the case, and which was undeniably highly prejudicial. The trial court's expression of his ruling shows that he understood the applicable evidentiary standard and the balance that had to be struck in his ruling. And he said, if I may quote, whatever probative value illegal alien status may have is far outweighed by its prejudicial impact. So the court understood his task. He didn't attempt to approach it in a wrong manner. Defendant's offer of proof consisted entirely of documents. There were the employment records of Francisco's lawyers and a government pamphlet. There was no offer of proof as to any witness who would testify in the documents or any witness who would have testified as to Francisco's status. The defendant's plan, as has already been drawn out by the questioning from the court here, was to simply give the documents to the jury without any testimony or guidance whatsoever, let alone expert testimony. And defendant argues here that expert testimony wasn't necessary, and in fact that no expert testimony or no testimony at all was needed. And yet at one point the record reflects that at one point they had contacted an expert to testify, but then never offered him in any way at the time of trial or in the offer of proof. They didn't offer any other evidence. And again, many of these things have already been touched upon in the court's questioning. They didn't offer any evidence that the defendant or ECF or anyone else intended to investigate his employment status despite the fact that he had worked and that the defendant had accepted the benefits of his work in this plant for a long time, that any federal agency or state agency was or intended to investigate his status, nor, and these things are all appropriate and outlined in cases from around the country, that any immigration proceedings had ever been instigated. Now, defendant argues that we don't understand two things. They said that we don't understand what an offer of proof is, and yet the case they cite, Northern Trust, says that an adequate offer of proof has to show what the expected testimony will be, by whom it will be presented, and its purpose. But that's not really an issue here now after the argument, because it's been clearly admitted in response to questioning that there was not going to be any testimony offered whatsoever, that the offer of proof was just a pair of naked documents all by themselves. When you're trying to prove something that's pretty much within the exclusive knowledge of the other party, isn't it okay just to sort of open the door? You don't have to prove something like that with absolute certainty, do you? You have to properly open the door. I mean, here, really all they want to do is be able to get, if court's inquiring, stop me if I don't understand the question, please. Well, I mean, if you asked my parents whether I was an illegal immigrant, and they said they didn't know, I think that would be some pretty convincing evidence. Well, there wasn't even that kind of testimony offered. I mean, there was nobody who was going to testify to anything. It was just going to be these documents all by themselves, and that's it. And there are lots of ways that the government records could have been consulted. They could have gone further to look into it. There was nothing other than some raw documents that really don't prove anything. They also argued that we don't understand that all evidence is prejudicial, and that our claim of great prejudice underscores that it was highly broken. The only thing I want to say about that is that they have it exactly backwards. Because they know that the evidence is prejudicial, they argue, in fact they said in their reply, because it is prejudicial, then it is therefore broken. The best reason cases, and there was some inquiry from the court here about what cases around the country hold, the best reason cases strike the exact balance which the trial court did here. And they say that even assuming for purposes of argument, some extremely minimal relevance, the corresponding and undeniably great prejudice greatly and substantially outweighs that marginal relevance. Salus versus Hitech is the most recent and the most sophisticated ruling on this point. It was decided by the Supreme Court of Washington a year ago, and it examined the minimal quality of the relevance here, and documented, I looked at their stats, that there are 11.8 million, as of 2008, relevant here, there were 11.8 billion illegal aliens in the country, and that less than 1% are apprehended, etc. But the court then said, and in that case there was no evidence of immigration proceedings or anything else, but the court said, okay, we will accord some minimal possible relevance here. But then went on to get to the heart of the matter, which is that you can't get a fair trial in light of the highly prejudicial quality of the evidence. And the court said, trial courts have wide discretion, and that's what we're dealing with here. We're dealing with rulings on discrete pieces of evidence from a trial judge. They said that immigration is a politically sensitive issue which can inspire passionate responses. That issue can interfere with the duty of the jurors of reasoned deliberation, and the considering, and this was the holding of the court, that considering the low probative value of immigration status with regard to even a direct claim of lost future earnings, which was not what we have here, the risk of unfair prejudice is too great. And we've cited other cases that go there. This is a wrongful death case. It is not a direct claim for lost wages. The proof of the purely monetary aspect of Francisco's contributions is relatively minimal, as has been pointed out by some of the questioning already. And what the plaintiff's attorney asked the jury to award for future monetary contributions, even if the jury were to award all of it, was less than 6% of the verdict. In terms of the more global inquiries of the court in terms of how to decide a case like this, the permitting fair trials to be conducted by excluding evidence such as offered here will neither encourage nor reward illegal immigration. We've offered substantial other authority for that proposition at page 20 of our brief, and the cases say, and Illinois Appellate Court has said, in an unrelated type of case, economy packing, which is a workers' compensation case, and the entitlement to specific elements of damage in workers' compensation, that it is unreasonable to think that immigrants will seek to come here on the hope or expectation of being severely injured or killed and then achieving American-style verdict awards. If defendant were sincere in its claims of relevancy, what would it have sought to argue to the jury? And this, too, was touched upon by some of the questioning. That Francisco would have been returned to Mexico or that he might have earned less money there. That's the point of the evidence, that he would have had to go back to Mexico and they would have had to earn less money. But defendant didn't make any of those arguments to the jury. The defendant tells this court in its brief that, well, you know, this verdict is too high because Francisco may well have gone back to Mexico and he may well have been earning less money if he did that. And he could have made those arguments to the jury, separate and apart from immigration status, but he didn't do that. And they didn't argue, which they told this court, that he would likely not have returned from his impending trip to celebrate his birthday with his family and that he was guilty of living a nomadic lifestyle, which, of course, is really just shorthand for the fact that he was a young guy finding his way in the world. It is apparent that the defendant's real plan here was to tap into the tremendous prejudice which is inherently and unsolvably inherent in this immigration issue, once any hint of it was given to the jury. And that's all they wanted to do here was get a hint of it to the jury and that was sufficient. They weren't even prepared to really prove the issue of status. So I ask you, but only rhetorically, is there any question in your minds that if even a question of the illegal status of Francisco had been raised, that the Garcia family would have been able to receive a fair trial on its claims for the loss of their son and his really unspeakable pain and suffering? The defendant was content to have Francisco working in his plant for years and it's only now, after the death, that it wishes to investigate and take whatever advantage it can leverage out of that. Didn't the plaintiff's attorney tell the jury during voir dire that he was a legal immigrant? He did not, Your Honor. You're referring to the questioning of the Vennire person, Odell. And we've reproduced it in the brief. I have it in my notes here, but I'd rather just talk with you about it. And the Vennire person basically did say, well, I don't have a problem if it's legal. It wasn't even quite a complete statement of it. And all the counsel did was say, well, there will be no issue of legal in this case. Now, as I've tried to develop in the brief, first of all, it was an accurate statement. Secondly, it's exactly the sort of thing which a trial judge, and I'm not calling the trial judge for not doing it, but conceptually if the trial judge had intervened at that point. Well, he did. The trial judge said, don't be saying stuff like that, didn't he? Well, what he said in the words of counsel afterwards, he said he admonished him, which is really like a warning. And if he persists, I'll have to reconsider the rulings. But there is no evidence that he persisted or anything else like that. So it was really the other thing that has to be kept in mind here. It's during voir dire. You're talking to people who you don't control, who you never had a chance to take a deposition over anything else. And it is one sentence in the moment, so to speak. And the trial judge, I mean, there's almost nothing at the trial, which is more within the discretionary control of the judge than voir dire, which is this amorphous and very fluid thing. The trial judge was unconcerned about the matter. So because the issues have been limited by the appellant here, let me just conclude on that. We respectfully urge that when you consider, again, the three points here, that you have flimsy and inadequate evidence, that you have something which is only of bare, marginal, potential relevance in a case like this. And when you consider the undeniable prejudice, we believe that the trial judge did not abuse his discretion in making the determination that he did. Unless the court has any questions about any other issues, I'll just touch briefly on the last issue, the other issue they talked about, Section 222. Justice Pope's question brought out the timing, and I believe Justice Cook touched upon that as well. The complaint was amended, that is, the process of amendment was complete, 10 weeks after the filing of the complaint, and the motion to amend was on file 13 days after the motion was made to dismiss it. And perhaps knowing who the panel would be in this case, Judge Grady has said that this court has absolutely no doubt that Justice Connacht and every other justice from the Fourth District would say that this court abused its discretion if it refused to allow an amendment of the plea under these circumstances. The case that Grady v. Marchini, which is the only case they relied upon here, which the court was called upon to decide earlier, is just vastly different. It was filed as an LM case as opposed to an L case here. The damages were pled there to exceed only $15,000, and the case went to jury trial, a verdict, and judgment without the plaintiff ever seeking to be held accountable. There is no prejudice here. I'd be delighted to entertain any other questions the court may have for me, but otherwise we rest, and thank you for your consideration. We do not. Thank you. Thank you. Ms. Rappas? I'd like to briefly address some points that the plaintiff made in the argument. The first is, again, saying that these documents don't show anything. Of course, that completely ignores Mr. Garcia's own admission that he didn't have the proper documents. They completely ignore that. That's evidence. Now, we pursued this line, this topic, since the outset of the litigation. It was a topic of multiple discovery requests. We propounded interrogatories. Please tell us what Mr. Garcia's status was. Request to produce. Please produce his documents, passport, visa, work authorization documents, whatever you have. Request to admit. Admit that he was not legally authorized to be in the country, and he never had valid documents. In response to everything, we get, I don't know, I don't have it, you can't prove it. I mean, as you said, Justice Cook, I mean, it's not within our knowledge. It's exclusively within Mr. Garcia's knowledge or his family member's knowledge. They're saying, you know, they don't know. So we tried to get all this evidence, and tellingly, they've never once stood up here and said, no, you're wrong, he wasn't an illegal alien. And that is the best evidence, the fact that they haven't denied it. Secondly, the plaintiff says, well, we could never have gotten a fair trial. It was too prejudicial. But remember the posture of this case. It was an admitted fault case. So liability wasn't an issue. It was strictly damages, you know, so it was relevant to those damages only. It would have been confined to those damages. It would not have had anything to do with liability. I don't think that cuts in your favor. I think you could draw a human, I think you could draw an inference from human experience that the jury might have found that there was liability despite his status. But the economic impact could have been affected by immigration status. Well, I'm not sure I understand what you're saying. I mean, evidence wouldn't have been really relevant to liability. How did the accident occur? Who's at fault? What I'm saying is that in a typical case, if the defendant had not admitted fault, and so you're trying liability and damages together, there might be an issue with respect to unfair prejudice because the jury might hear the evidence and be like, you know, they might be prejudiced with respect to liability. What I'm saying here is that that was out of the case. It was tried on damages only, and the evidence was relevant to damages, so there's no danger of unfair prejudice. That's exactly what I was saying. The evidence has its, whatever probative value it has, its prejudicial nature, its prejudicial value is much, much higher. The risk is much, much higher on the damages question. Well, so is the probative value, though. But it is probative. It's relevant to the damages. And here it's, you know, and because the probative value is so high, there's not a substantial, you know, the prejudice doesn't substantially outweigh probative value because the probative value is also very high. And what's more, in this case in particular, I mean, they opened the door to it in trial. I mean, for example, in closing argument, the plaintiff's counsel said there's no reason to assume that, you know, Mr. Garcia would not have continued to support his family. Everybody knows he's an illegal alien, and that's a very good reason why he might not have continued to earn U.S. wages, U.S. earnings during the relevant time period. So they opened the door to it, not just once, but several times. So given that fact, in conjunction with the highly probative value of the evidence, shows that it wouldn't have been unfair to admit the evidence in this case. And then just for a final point, I just want to point out that, you know, they say we can't prove, you know, Mr. Garcia would have been imminently deported. That is not the only circumstance warranting admission of this evidence. If his employer had found out, if ECF had discovered his status, they would have had to fire him. If he's fired, he's not working. It doesn't matter that he's not been physically removed from the country. He's not earning those wages, and that bears directly on his future contributions to his family. And so just because he wasn't deported, even if he'd never been deported, the evidence would still be relevant to what he would have earned in the future. If there are no more questions, we ask that you reverse the judgment and grant him trial. Thank you. Thank you. Good argument, both sides. Thank you.